UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUONG VAN NGUYEN,<br><br>    Petitioner,<br><br>vs.<br><br>IVAN CLAY,[1/] Acting Warden<br><br>    Respondent. | No. 2:03-cv-02263-JKS(HC)<br><br>MEMORANDUM DECISION |

   Cuong Van Nguyen has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently incarcerated by the California Department of Corrections and Rehabilitation at the Sierra Conservation Center, Jamestown, California, serving a term of 18 years and four months.

PRIOR PROCEEDINGS

   Petitioner was convicted after a jury trial of attempted murder, assault with a firearm, and threatening a witness in the California Superior Court, Sacramento County.[2/] The jury also found as true that Petitioner was a principal in a crime in which one or more principals were armed with a firearm and that all the crimes were committed for the benefit of a criminal street gang. Petitioner timely filed an appeal to the California Court of Appeal, which affirmed the conviction in an unpublished written opinion. Petitioner's petition for review by the California Supreme Court was summarily denied without opinion on January 22, 2003. Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, April 22, 2003. *See Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir.2001). Petitioner timely filed his petition for habeas relief in this Court on October 30, 2003.

---

  [1/] Ivan Clay substituted for Matthew C. Kramer, as warden of the Sierra Conservation Center, Jamestown, California. FED. R. CIV. P. 25(c).

  [2/] Petitioner was tried jointly with two co-defendants, Vuong Van Nguyen and Dinh Minh Do, who were also convicted of the attempted murder and assault with a firearm charges.

Petitioner raised two grounds in his petition: (1) Insufficiency of the evidence; and (2) the trial court improperly instructed the jury (effectively directed a guilty verdict). Respondent moved to dismiss the petition as to the first ground on the basis that the claim, while properly presented to and decided by the California Court of Appeal on direct appeal, was not properly presented to the California Supreme Court in Petitioner's petition for review.[3/] The Court stayed this proceeding while Petitioner sought habeas relief from the California Supreme Court on Petitioner's first ground (insufficiency of the evidence). The California Supreme Court summarily denied Petitioner's habeas petition citing *In re Clark* (1993) 5 Cal.4th 750; *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Dixon* (1953) 41 Cal.2d 756; *In re Lindley* (1947) 29 Cal.2d 709, July 14, 2004. Petitioner then filed an amended petition reasserting the same grounds in reverse order.

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeals. In the interests of brevity they are not repeated here.

## GROUNDS/STANDARD OF REVIEW

Petitioner raises two grounds in his amended petition . Ground 1: The trial judge impermissibly directed a verdict by telling the jurors they had all the elements of the crime proven. Ground 2: That the evidence was insufficient to convict him of the attempted murder and assault with a firearm. Both grounds were presented to the California Court of Appeal on direct appeal while the first ground was presented to the California Supreme Court in the petition for review in that court on direct appeal and the second ground was presented to the California Supreme Court in the subsequent state habeas petition. Respondent concedes that Petitioner has now exhausted his state law remedies.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

---

[3/] Although Petitioner fairly presented this ground to the intermediate appellate court on his direct appeal, in his petition for review in the California Supreme Court Petitioner requested that the "natural and probable consequences" doctrine be more precisely defined. Petitioner did not raise any facts specific to his case or otherwise argue sufficiency of the evidence. Thus, at that point Petitioner had failed to fully exhaust his state court remedies by presenting both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155–56 (9th Cir.2003), citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeals on direct appeal. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir.2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

## DISCUSSION

Ground 1: Improper Jury Instruction. Petitioner argues that the trial court improperly instructed the jury by adding "commentary" to CALJIC 8.66, which Petitioner claims impermissibly directed a verdict as to that element of the crime.

In instructing on the charge of attempted murder, the trial court stated as follows to the jury (the challenged portion is italicized):[4/]

---

[4/] As set forth in the opinion of the California Court of Appeal.

> In the crime charged in Count 1, the attempted murder, there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator. Unless this mental state exists, the crime to which it relates is not committed.
>
> The mental state required is included in the definitions of the crimes set forth elsewhere in these instructions. That's coming up right now.
>
> This is the definition of Count 1. Defendant is accused in Count 1 of having committed the crime of attempted murder in violation of Sections 664 and 187 of the Penal Code.
>
> Every person who attempts to murder another human being is guilty of a violation of Penal Code Sections 664 and 187.
>
> Murder is the unlawful killing of a human being with malice aforethought. That's the mental state, malice aforethought.
>
> In order to prove attempted murder, each of the following elements must be proved; one, a direct but ineffectual act was done by one person towards killing another human being; and, two, the person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being.
>
> *So right there in number two you have your mental state, malice aforethought, and you have your specific intent requirement, that is, specific intent to kill unlawfully another human being*.

Rejecting Petitioner's argument, the California Court of Appeal reasoned:

> Defendants argue that the italicized portion of the foregoing instruction directed the jury to find that the required mental state for attempted murder had been proved. Do argues: "These comments are clearly not balanced because they are the equivalent of directing the jury that in this case they 'have' the 'mental state' and 'have' the 'specific intent requirement.'"
>
> When reviewing ambiguous instructions, we inquire "whether there is a reasonable likelihood that the jury misconstrued or misapplied the words . . . ." (*People v. Clair, supra*, 2 Cal.4th at p. 663.) Nothing in the trial court's comments informed the jury that the prosecution had proven the intent requirement. Nor did the trial court's comments lighten the prosecution's burden of proof. Rather, the trial court's comments simply emphasized for the jury that attempted murder required the union of an act and a certain mental state and that the mental state for murder was malice aforethought, namely, a specific intent to kill unlawfully another person. In context, that is all the trial court said when it stated, "So right there in number two you have your mental state, malice aforethought . . . ."
>
> Indeed, the record reveals that the trial court, throughout the instructional phase, often explained in lay terms some of the more technical language contained

in the instructions.[11]  At no time was any objection raised by defendants.  Given that three defense attorneys were present during the reading of the instructions, we cannot fathom that an objection would not have been raised if counsel at any time believed that the court was eliminating the need for the jury to decide one of the elements.[12]

---

[11]  Article VI, section 10 of the California Constitution authorizes a trial judge to make such comments to the jury "as in its opinion is necessary for the proper determination of the cause."

[12]  In so concluding, we in no way suggest that defendants waived the issue by failing to object in the court below. (*See* § 1259.) We simply observe that the lack of any objection at any time throughout the instructional phase suggests that counsel did not believe the trial court overstepped its bounds in the comments that it added to the instructions.

---

Accordingly, our review of the record finds that the trial court did not act improperly or confuse the jury in explaining in more understandable language the instruction on attempted murder.  The trial court's comments were accurate, nonargumentative, and fair. (*People v. Rodriguez* (1986) 42 Cal.3d 730, 766.)

This Court must determine under § 2254(d)–*Williams–Lockyer* whether the decision of the California Court of Appeal was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  For the reasons that follow, the Court can not.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California,* 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Francis v. Franklin*, 471 U.S. at 324 n. 9.  It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Estelle v. McGuire*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that

violates the constitution and that the category of infractions that violate "fundamental fairness" very narrowly. *Id*., 502 U.S. at 72–73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*.

This Court agrees with the California Court of Appeal that the challenged instruction, taken in context, was not erroneous and it certainly did not prevent the jury in this case from considering constitutionally relevant evidence nor did it impermissibly direct the jury to find that malice aforethought, a specific intent to unlawfully kill, was established. The instruction, as a whole, made clear that the prosecution had to prove the element of malice aforethought.

Petitioner is not entitled to relief on his first ground.

Ground 2: Insufficiency of the Evidence. Respondent argues that the second ground raised by Petitioner is procedurally barred. The Court agrees.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims · · ·." *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

As noted above, Petitioner's second ground was not exhausted on direct appeal. The California Supreme Court summarily denied Petitioner's habeas petition to that court, in which the second ground was presented, citing *In re Clark* (1993) 5 Cal.4th 750; *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Dixon* (1953) 41 Cal.2d 756; *In re Lindley* (1947) 29 Cal.2d 709. Under California law, as applied by its Supreme Court, in a habeas corpus proceeding "sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration." *Ex parte Lindley*, 177 P.2d 918, 926–27 (Cal.1947); *see Neal v. State*, 357 P.2d 839, 842 (Cal.1961) (applying *Lindley*); *Ex parte Dixon*, 264 P.2d 513, 515 (Cal.1953) (same). Indeed, Petitioner raised insufficiency of the evidence in his direct appeal. An exception recognized is where there is newly discovered and credible evidence that undermines the entire case of the prosecution. *See In re Hall*, 237 P.2d 690, 693 (Cal.1981); *In re Branch*, 449 P.2d 174, 184 (Cal.1969). That exception was not

raised before the California Supreme Court.[5/] That a rule precluding collateral review of issues that may be raised on direct review constitutes an adequate and independent state grounds is settled. *Reed v. Ross*, 468 U.S. 1, 10–11 (1984) (applying an identical North Carolina rule).

Petitioner argues that the "cause and prejudice" exception to a procedural bar, *Engle v. Issac*, 456 U.S. 107, 129 (1982), should be applied in this case, *i.e.*, that his procedural default was predicated by ineffective appellate counsel in failing to properly present the claim in his petition for review by the California Supreme Court on direct appeal, citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner's argument fails. Petitioner did not present his ineffective assistance of counsel argument to the California Supreme Court in his petition to that court for habeas relief. Having failed to fairly present the issue to the state court, Petitioner is precluded from raising it before this Court in a federal habeas proceeding. *Id.*, 477 U.S. at 488–89. Moreover, Petitioner can not establish that appellate counsel was ineffective. As discussed further below, the California Court of Appeal held that the evidence was sufficient under California law as interpreted and applied by the Court of Appeal. Rather than continue this argument before the California Supreme Court, counsel elected to argue that the Court of Appeal failed to recognize the distinctions in the "natural and probable consequences" doctrine. "Judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the broad range of reasonable assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial practice." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (internal quotation marks and citations omitted). Petitioner has not overcome the presumption that the decision of appellate counsel to change his approach in seeking review by the California Supreme Court was not a reasonable tactical decision. *See, e.g., Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989)

---

[5/] The Court notes that Petitioner has appended to his traverse an unsworn letter dated March 16, 2004, submitted by co-defendant Vuong Van Nguyen ("Vuong") in connection with the co-defendant's withdrawal of his habeas petition before this Court (2:03-cv-00318). In that letter Vuong takes sole responsibility for the crime and further states that Petitioner did not know of that Vuong had the gun and asserts that Petitioner is falsely imprisoned. Not only was this "evidence" not presented to the California Supreme Court, it is unsworn, conclusory, untimely, and simply insufficient to establish Petitioner's innocence. Moreover, the critical fact that Vuong, not Petitioner, was the actual shooter was never in dispute.

(holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel). Petitioner's second ground is procedurally barred.

Even if this Court were to reach the second ground on the merits, the result would not change. The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). The last reasoned decision on the issue of the sufficiency of the evidence was that of the California Court of Appeal on the direct appeal. Assuming for the purposes of this discussion, the California Supreme Court in denying review adopted that decision, this court must determine whether decisions by the California courts on the merits unreasonably applied *Jackson*.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir.2005).

In rejecting Petitioner's arguments that there was insufficient evidence to support the conviction of attempted murder and assault with a weapon, the California Court of Appeal held (internal names in brackets and emphasis as in the original):

> C. Nguyen and Do argue that there is insufficient evidence to support their convictions of attempted murder (count one). (Fn 13 omitted) We disagree.
>
> The prosecution argued, and the jury concluded, that V. Nguyen was the actual perpetrator of the attempted murder and of the assault of Doan. The prosecution further argued, and the jury found, that C. Nguyen and Do either aided and abetted a planned attempted murder and assault or that the attempted murder and assault were the natural and probable consequences of the attempted false imprisonment, C. Nguyen argues that "the prosecution presented no evidence at trial that [C. Nguyen] had any prior knowledge that one of the other young men in his company was armed with a gun, or intended to use a gun or otherwise engage in violent activity. The basis for [C. Nguyen'sl conviction arose from the legal theory that he had committed the crime of *attempted false imprisonment*, a misdemeanor,

[and that] the specific intent crime of attempted murder committed by [V. Nguyen] was the 'natural and probable consequence' of [C. Nguyen'sl alleged crime of attempted false imprisonment." Do agrees that "to find [him] guilty of attempted murder, the jury was required to find that [he] was guilty of the target offense of misdemeanor false imprisonment."

To the contrary, the prosecution did not rely solely on the natural and probable consequences doctrine at trial. Rather, the prosecutor specifically argued to the jury that it could convict C. Nguyen and Do based on two separate theories: (1) that they directly aided a planned, albeit unsuccessful, murder from the beginning, or (2) that they actively participated in an attempted false imprisonment, which resulted in, as a natural and probable consequence, assault with a deadly weapon and attempted murder. Counsel for C. Nguyen echoed the People's position in his closing argument. In our view, there is substantial evidence to support both theories.

However, there is no need for us to discuss both theories here. "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." *(People v.* Guiton (1993) 4 Cal.4th 1116, 1129.) We will thus consider the sufficiency of the evidence under the more difficult theory that C. Nguyen and Do aided and abetted the attempted false imprisonment of Doan, and that the attempted murder and assault were the natural and probable consequences of the intended crime.[14]

---

[14]   We have also chosen to assess the evidence under this theory because the trial court's instructions for aiding and abetting were ambiguous as to whether they were only applicable to the "natural and probable consequences" doctrine.

---

A.

A person aids and abets the commission of a crime when he, "'by act or advice, aids, promotes, encourages or instigates the commission of the crime.'" *(People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) Furthermore, he must act with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, facilitating, or encouraging the commission of a crime. *(Ibid.)* While neither presence at the scene of a crime nor knowledge of, but failure to prevent the crime, is sufficient to establish aiding and abetting *(ibid.)*, "'[t]he presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting . . . .'" (*People v. Moore* (1953) 120 Cal.App.2d 303, 306.)

Under the "natural and probable consequences" doctrine, the jury must find that (1) the aider and abettor (a) with knowledge of the confederate's unlawful

purpose, and (b) with the intent of committing, encouraging, or facilitating the commission of any target crime, (c) aided, promoted, encouraged, or instigated the commission of the target crime, and that ( 2 ) the confederate committed an offense other than the target crime which was a natural and probable consequence of the target crime. (*People v. Prettyman, supra*, 14 Cal.4th at p. 267.)

Proof of an aider and abettor's intent may be adduced "'by way of an inference from [the aider's] volitional acts with knowledge of their probable consequences.'" (*People v. Mitchell* (1986) 183 Cal.App.3d 325, 330.) The trier of fact also properly may consider the defendant's companionship with the perpetrators and his conduct before and after the offense. (*People v. Moore*, *supra*, 120 Cal.App.2d at p. 306; see also *People v, McDaniels* (1980) 107 Cal.App.3d 898, 904.) Finally, all factual conflicts as to whether a defendant aided and abetted a crime must be resolved in favor of the judgment. (*People v. Mitchell, supra*, 183 Cal.App.3d at p. 329.)

B.

C. Nguyen contends that " [tl here is nothing in the record to indicate that [C. Nguyen'sl movements toward the keys were pre-planned or part of a common design as opposed to a spontaneous and independent act." Likewise, Do argues that his "culpability for the target offense, misdemeanor false imprisonment, is significantly less than that of [codefendants C. Nguyen and V. Nguyen]. There was no evidence, direct or circumstantial, that [Dol knew that a false imprisonment was contemplated, if indeed it was."

We reject these contentions. In fact, there is no other explanation but attempted false imprisonment for the simultaneous and coordinated encirclement of Doan's car, particularly in light of the 15-minute interval between the time the gang first spotted him and the gang's return, which gave them time to plan the false imprisonment and explains their ability to coordinate their actions.

Specifically, the evidence at trial showed that one day prior to the attack on Doan, C. Nguyen was involved in a verbal confrontation with Doan's friend, a rival gang member. Doan was present during that confrontation and eventually told his friend to "forget it."

The next day, Doan and Judy were outside Judy's house when a red Honda Prelude driven by C. Nguyen slowly went by. The Prelude returned approximately 15 minutes later and parked directly behind Doan's car. From these facts, the jury reasonably could infer that all five occupants of the Prelude did not simply enjoy driving in circles, but had used the 15-minute interlude to formulate their plan of attack on Doan.

After parking behind Doan's car, the car's occupants -- Do, V. Nguyen, **C.** Nguyen, Chuckie, and Insane -- immediately exited the vehicle and symmetrically surrounded the victim's car. Do claimed at trial that they stopped the car to talk with

the girls. But that explanation is belied, first, by the fact that upon exiting the Prelude, the defendants ignored the girls and went directly to Doan's car and second, by Judy's testimony that C. Nguyen told her he just wanted to talk to Doan, That the group did so without any verbal direction suggested again that they had already discussed their plan to surround and attack the victim.

At that point, C. Nguyen shouted out his gang name, which expert testimony established was a war cry to mobilize his gang into action. Whether they were present or former gang members, V. Nguyen and Do would have understood the context of C. Nguyen's announcement. But they chose not to leave and kept their position next to Doan's car. C. Nguyen then attempted to remove Doan's keys from the ignition. When Doan sought to drive away, C. Nguyen used his hands to try to stop Doan. Additionally both Chuckie and Do moved toward the front of the car in an apparent attempt to halt the vehicle's progress. At that point, V. Nguyen stuck his hand inside the car and fired at Doan from a distance of one to three feet.

Accordingly, the jury could reasonably conclude that defendants' actions supported the inference that they had planned a crime against the victim, which included false imprisonment, and that they thus had knowledge of the crime that they had just planned. Second, having so concluded, the jury could also reasonably find that the actions of C. Nguyen and Do in surrounding the car, C. Nguyen's attempt to get the car keys, and Do's attempt to halt Doan's escape showed that they had the intent and purpose of facilitating the crime of attempted false imprisonment; therefore, the evidence was sufficient to find that they aided and abetted the crime of false imprisonment. (*People v. Campbell, supra*, 25 Cal.App.4th at p. 409.)

Do stresses that he "did nothing more than walk toward the front passenger fender of the car of Doan and stand there." But that act, seemingly innocent if viewed in isolation, loses its innocence when viewed as part of a symmetrical pattern that together depicts a crime -- in this case, the simultaneous encirclement of a car and an effort to grab the victim's car key to restrain his movements, that is, attempted false imprisonment.

It is likewise absurd for C. Nguyen to suggest that "[t]here is nothing in the record to indicate that [his] movements toward the keys were pre-planned or part of a common design as opposed to a spontaneous and independent act" because innocent and independent actors do not stick their hands inside a car that just happens to be surrounded by five gang members.

Finally, C. Nguyen argues that "the prosecution presented no evidence at trial that [C. Nguyen] had any prior knowledge that one of the other young men in his company was armed with a gun, or intended to use a gun."

But the prosecution only had to show that the assault with a deadly weapon and the attempted murder were simply the natural and probable consequences of the attempted false imprisonment. And this was not simply any attempted false

> imprisonment perpetrated by a group of juveniles, but by a criminal street gang. Expert testimony explained that the VPG used many weapons in its confrontations, including billy clubs, knives, handguns, revolvers, rifles, shotguns, and assault rifles. That made probable the use of deadly force in connection with a victim's attempted escape from an attempted false imprisonment. There was thus sufficient evidence for a jury to conclude that a confrontation by the VPG could directly, naturally, and probably result in the use of a gun.
>
> That inference was assisted by two additional pieces of evidence. First, the jury could infer knowledge by C. Nguyen and Do that a confrontation, even with a stranger, could escalate quickly into a shooting by virtue of additional evidence of past confrontations that had escalated into shootings. In 1993, C . Nguyen himself was part of a group of Asians who had surrounded an innocent bicyclist; C. Nguyen had gotten a gun from his car and fired a shot at the rider. And in 1996, Do and C . Nguyen had been present at an altercation at a mall with a rival gang member, which just coincidentally was promptly followed by a drive-by shooting of that rival gang member.
>
> Second, neither C. Nguyen nor Do expressed any surprise in the period after the assault, suggesting that what transpired was neither unexpected nor unforesee-able. At no time did C. Nguyen or Do call for assistance or report the crime, as they might if it was unexpected or unintended. Do showed no distress about the crime afterwards, as might be expected if the crime had not been planned or expected. And C. Nguyen did not evince shock at the shooting, but drove away after threatening Judy that harm would befall her if she "snitched" on them. While C. Nguyen claims that his command, "let's go," was evidence of surprise, the evidence suggests that the statement was more of a command to his cohorts that they needed to make a fast escape -- which they did without hesitation and without further direction.
>
> We conclude that there was substantial evidence to support C. Nguyen's and Do's convictions for attempted murder and assault.

The decision of the California Court of Appeal clearly held that the evidence was sufficient to sustain the conviction of the crimes of attempted murder and assault *under California law*, as interpreted and applied by it. Whether the Court of Appeals correctly applied California law is beyond the purview of this Court in a federal habeas proceeding. Moreover, because Petitioner raised the question of the proper scope and application of the "natural and probable consequences" doctrine in his petition for review before the California Supreme Court, this Court assumes that, in denying the petition, the California Supreme Court did not disagree with the Court of Appeal.

Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the

credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime with which a petitioner is charged, as determined by state law. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Petitioner has failed to carry.

Petitioner is not entitled to relief on his second ground.

Accordingly, because Petitioner is not entitled to relief under either ground asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)); *Hoffman v. Arave*, 455 F.3d 926, 943 (9th Cir.2006) (same). All federal constitutional issues, to the extent they were not procedurally defaulted, were addressed by the California Court of Appeals and deemed addressed by the California Supreme Court on direct appeal, and no reasonable jurist could find that those decisions were "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated: June 11, 2007.

s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge